Filed 6/3/15  P. v. Vasquez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>AZALIA MONTEZ VASQUEZ,<br><br>    Defendant and Appellant. | C076705<br><br>(Super. Ct. No. 11F04453) |

Defendant Azalia Montez Vasquez appeals from the judgment entered following her no contest plea to driving under the influence (DUI) causing bodily injury (Veh. Code, § 23153, subd. (a)), driving with a blood-alcohol content of 0.08 percent or more causing bodily injury (Veh. Code, § 23153, subd. (b)), felony hit and run (Veh. Code, § 20001, subd. (a)), and misdemeanor driving with a suspended or revoked license (Veh. Code, § 14601.1, subd. (a)).  Defendant also admitted she personally inflicted great

1

bodily injury upon Patrick Smith (Pen. Code, § 12022.7, subd. (a))[1] and drove with a blood-alcohol concentration above 0.15 percent (Veh. Code, § 23578).

The trial court denied probation and sentenced defendant to serve five years in state prison. Defendant contends: (1) her sentence must be vacated and the matter remanded for resentencing because the trial court erroneously believed defendant was statutorily ineligible for probation; (2) the trial court abused its discretion by imposing a consecutive, rather than concurrent, sentence for felony hit and run because the acts were committed in a continuous course of conduct; (3) the trial court erred in imposing a $390 fine pursuant to Vehicle Code section 23550; and (4) the trial court's imposition of restitution and parole revocation fines in the amount of $240 each pursuant to sections 1202.4 and 1202.45 must be reduced to the statutory minimum of $200.

We conclude the trial court erroneously believed defendant was statutorily ineligible for probation and remand for resentencing. Based on the record, we conclude the trial court did not abuse its discretion by imposing a consecutive term for felony hit and run. As to the $390 Vehicle Code fine, we strike the fine because defendant did not meet the criteria. With regard to the restitution and parole revocation fines, we conclude defendant has forfeited her contention because she failed to object in the trial court. Accordingly, we remand for resentencing and strike the $390 fine. In all other respects, the conviction and judgment are affirmed.

BACKGROUND

On June 19, 2011, at around 7:00 p.m., witness Shelby Simmons was driving on Fair Oaks Boulevard with a passenger, Alex Whitten. Simmons saw defendant's car leave the parking lot of an apartment complex and make a left turn onto Fair Oaks

---

[1] Undesignated statutory references are to the Penal Code.

2

Boulevard, nearly colliding with Simmons's car. A short time later, Simmons saw defendant swerve into the bicycle lane on Fair Oaks Boulevard. Simmons also saw Patrick Smith, the victim, walking in the bicycle lane.

Moments later, Simmons saw defendant swerve into the bicycle lane again and hit Smith, sending him flying into the air. Defendant did not stop, but continued driving down Fair Oaks Boulevard.

Simmons stopped his car and instructed his passenger, Whitten, to stay with Smith, who was seriously injured. Simmons then followed defendant to a nearby gas station. Simmons confronted defendant, and told her she needed to return to the scene of the accident. Defendant agreed to follow Simmons back to the scene. When they arrived, however, defendant looked in Smith's direction and continued driving down Fair Oaks Boulevard.

Simmons's passenger, Whitten, saw defendant pull into an apartment complex on Fair Oaks Boulevard. Whitten found defendant's car in a parking stall and noticed the car's shattered windshield.

A California Highway Patrol officer arrived at the apartment complex a short time later. When the officer contacted defendant, he noticed a strong odor of alcohol. He also noticed objective signs of intoxication, including red and watery eyes and slurred speech. A blood test taken approximately three hours after the collision revealed defendant's blood-alcohol content was 0.16 percent.

The victim, Smith, spent more than two weeks in the hospital. He suffered a flail chest, several rib fractures, a humerus fracture, and a collapsed lung.[2]

---

[2] A flail chest is a life threatening injury where segments of the rib cage break and become detached from the chest wall.

3

On September 29, 2011, defendant was charged by amended complaint (later deemed an information) with four counts as follows: (1) driving under the influence and causing bodily injury to Smith (count 1; Veh. Code, § 23153, subd. (a)); (2) driving with a blood-alcohol content of .08 percent or more causing bodily injury (count 2; Veh. Code, § 23153, subd. (b)); (3) felony hit and run (count 3; Veh. Code, § 20001, subd. (a)); and (4) misdemeanor driving with a suspended or revoked license (count 4; Veh. Code, § 14601.1, subd. (a)). With respect to counts 1 and 2, the prosecution alleged defendant personally inflicted great bodily injury upon Smith (§ 12022.7, subd. (a)). With respect to count 2, the prosecution alleged defendant drove with a blood-alcohol concentration above 0.15 percent (Veh. Code, § 23578).

Defendant pled not guilty and was held to answer on all charges. On August 23, 2012, defendant failed to appear for her trial readiness conference and a bench warrant was issued for her arrest. Defendant was reapprehended approximately eight months later.

On January 21, 2014, defendant pled no contest to all charges and admitted all of the special allegations. In entering her pleas, defendant agreed to "plead to the sheet," with no agreement as to sentence.

Defendant appeared for sentencing on April 25, 2014. In anticipation of the sentencing hearing, the probation department prepared a report stating, "The defendant is not eligible for probation pursuant to . . . Section 1203(e)(3), unless the Court finds unusual circumstances warranting a grant of probation." The probation department found no such unusual circumstances. Although the probation department believed defendant presented a "low risk to reoffend," the department recommended an aggregate term of four years four months in state prison in light of the nature and seriousness of the crime

and the fact defendant had sustained a prior conviction for DUI in 1998. (Veh. Code, § 23152, subd. (a).)

The probation department also reported the victim, Smith, was still receiving medical treatment for injuries sustained in the incident. According to the probation department, Smith was not interested in making a victim impact statement, but hoped defendant "gets into a rehabilitation program and gets the help she needs."

The prosecution submitted a sentencing memorandum noting defendant was eligible but not suitable for probation given the seriousness of the crime, defendant's prior DUI conviction, and the fact she absconded for eight months. The prosecution recommended an aggregate term of five years eight months in state prison.

Defendant, through her counsel, submitted a "response to probation report and recommendation" urging the trial court to impose the judgment recommended by the probation department, but suspend execution and grant defendant formal probation to allow her to participate in a one-year residential program for substance abuse called Teen Challenge.

At the sentencing hearing, the trial court provided a detailed analysis of the facts in determining whether to grant or deny probation. After commending the victim for his compassion, understanding, and desire that defendant enter a rehabilitation program, the trial court started its analysis by stating, "when I step back and try to reach a disposition of this case that is fair, not only to [the victim], but to the community in which we live, there are a number of problematic issues here that I wrestled with in terms of getting to where I am today. [¶] The first of those is the obvious fact that this is not your first venture into the issue of driving under the influence. As [the prosecutor] alluded, you have a 1998 conviction for DUI. [¶] And certainly, I understand the desire for a residential rehab program to address the substance abuse issues. It's hard to argue

that that doesn't have a logical role to play in terms of the Court's response to this particular incident involving you and [the victim]. But it would be certainly -- from my perspective, it would have been far better for you to have taken the rehabilitation program after the '98 incident instead of waiting until the horrific 2011 incident that brings us here today. The delay in recognizing the severity of your alcohol issue is significant for me."

The trial court went on to say, "The second thing -- I have to revisit it, because I think [the prosecutor] is 100 percent right in addressing it. And that is your conduct after the initiation of this case causes considerable concern for me in terms of your alleged commitment to going through a program. And I refer specifically to the fact that you were in abscond for seven to eight months after that Trial Readiness Conference was scheduled and you failed to appear. [¶] At no time until law enforcement, essentially, hunted you down and brought you back into the court system did you undertake any type of rehabilitation program. At no time did you consensually turn yourself in to the Court to face the consequences of your conduct involving this incident with [the victim]. And on top of which, not only did you disappear, but you were found in a position continuing to hide at the time law enforcement came and found you at your mother's residence. [¶] None of [this] speaks well for you in terms of offering up a commitment to change, a commitment to sacrifice, a commitment to assuming responsibility for the conduct relative to the event that brings you here today."

The trial court continued, "So it is also a difficult prospect when I have to balance issues of mercy and forgiveness versus justice because they tend to run in opposite directions. Certainly, [the victim] is taking the position that he is willing to concede that this Court has the ability to and could place you in a residential program whose focus is rehabilitation and forego, from his perspective, the imposition of a very significant

6

penalty in terms of state prison. That would be the road of mercy and forgiveness. [¶] But this community, and acting on their behalf, and standing in the place of [the victim] today, I don't believe that that's justice. I don't believe that it's compensatory for the injury that was inflicted upon [the victim] and the utter agony that he's going to go through for the balance of his life to allow you to walk out of this courtroom today, essentially, free of any fetters, and with a threat of some future incarceration if you fail in this program."

The trial court urged defendant to seek treatment for alcohol abuse, but added that, "I have to tell you, I do believe that justice demands imposition of a very significant penalty because I think it speaks clearly to the community's condemnation of your conduct, and it speaks to the issue of how significant it has been to one single member of the community, to wit: [the victim], in terms of his life-long struggle to now deal with the consequences of your conduct, not his conduct. [¶] He was simply walking on the side of the street when you ran him over. So I cannot find the way down the path that [defense counsel] points me toward. It is my intention to impose a state prison commitment."

The trial court continued, "I do happen to intend to find a middle ground between that which the People are asking for and that which Probation has recommended, but I would further note that even Probation, understanding that you were willing to commit yourself to this Teen Challenge Program rejected that in their perspective and suggested to the Court that it impose a state prison commitment. [¶] So having said that, I will make the note at the outset that you are not eligible for probation, and that is pursuant to . . . section 1203(e)(3), which makes you probation ineligible because of the infliction of great bodily injury unless this Court were to find unusual circumstances warranting a grant of probation."

7

The trial court concluded, "I do not find those unusual circumstances, and deny probation. Not only because of the totality of the circumstances involved in this case, particularly, because you do have this prior history, the DUI that went unattended in terms of necessity of reconstructing your behavior patterns as they involve themselves with alcohol, and further because of the high blood alcohol contents that you were found with at the time of this particular incident, to wit: [¶] Your alcohol -- your blood alcohol level was .16, which is double the legal limit that we all are familiar with here in the State of California."

Accordingly, the trial court denied probation and sentenced defendant to serve five years in state prison as follows: (1) the low term of one year four months for count 1 (Veh. Code, § 23153, subd. (a)), with an additional three years for the great bodily injury enhancement (§ 12022.7, subd. (a)); (2) one year four months for count 2, stayed pursuant to section 654; (3) eight months for count 3 (Veh. Code, § 20001, subd. (a)), to be served consecutively; and (4) 30 days for count 4 (Veh. Code, § 14601.1, subd. (a)), deemed served. With respect to the sentence for count 3, the trial court explained: "I impose the consecutive sentence under [California Rules of Court[3]] [r]ule 4.425(a)(1), finding that the crimes in Count One and Count Three and their objectives were predominantly independent of each other."

The trial court also assessed various fees and fines, including a $390 fine pursuant to Vehicle Code section 23550, a $240 restitution fine pursuant to section 1202.4, and a $240 parole revocation fine pursuant to section 1202.45. With respect to the foregoing fines, the trial court stated, "It is further the judgment and sentence of this Court that you are ordered to pay a fine of $390, a restitution fine set in the minimum amount of $240.

---

[3] Undesignated rule references are to the California Rules of Court.

An additional restitution fine in the same amount is imposed but suspended and will remain suspended unless and until your parole is revoked."

Defendant filed a timely notice of appeal.

## DISCUSSION

## I

### *Denial of Probation*

Defendant contends she is entitled to a new sentencing hearing because the trial court erroneously believed she was presumptively ineligible for probation.  We agree.

All defendants are eligible for probation, in the discretion of the sentencing court, unless a statute provides otherwise.  (*People v. Aubrey* (1998) 65 Cal.App.4th 279, 282.)  Some statutes bar probation absolutely, while others provide that a defendant is ineligible except in unusual cases where the interests of justice would be served.  (*Ibid.*)  Here, the trial court apparently relied on the probation report to conclude section 1203, subdivision (e)(3), rendered defendant ineligible for probation absent unusual circumstances.

Section 1203, subdivision (e), provides:  "Except in unusual cases where the interests of justice would best be served if the person is granted probation, probation shall not be granted to any of the following persons:  [¶] . . . [¶]  (3) Any person who willfully inflicted great bodily injury or torture in the perpetration of the crime of which he or she was convicted."  By its terms, section 1203, subdivision (e)(3), renders a defendant conditionally ineligible for probation only when there has been a finding the injury was willful, i.e., intentional.  (§ 1203, subd. (e)(3); *People v. Lewis* (2004) 120 Cal.App.4th 837, 854.)  Here, though defendant admitted she personally inflicted great bodily injury upon Smith (§ 12022.7, subd. (a)), she did not admit Smith's injuries were willfully inflicted, and no such finding was ever made.  Thus, the trial

9

court erred in concluding defendant was presumptively ineligible for probation. (*Lewis*, at p. 854.)

We next consider whether the trial court's application of an erroneous standard of probation eligibility entitles defendant to a new sentencing hearing. Where, as here, "the sentencing court bases its determination to deny probation in significant part upon an erroneous impression of the defendant's *legal* status, fundamental fairness requires that the defendant be afforded a new hearing and 'an informed, intelligent and just decision' on the basis of the facts. [Citation.]" (*People v. Ruiz* (1975) 14 Cal.3d 163, 168; see also *People v. Sherrick* (1993) 19 Cal.App.4th 657, 661; *People v. Manriquez* (1991) 235 Cal.App.3d 1614, 1620.) Thus, we must remand for resentencing if the record demonstrates the trial court's error played a significant part in the denial of probation.

The People concede the trial court's error, but argue remand is not required, because "the record shows that the court did not rely solely or even significantly on its error in deciding to deny probation and impose a prison sentence." We do not think the record is so clear. Although the trial court focused on the prevalence of aggravating factors and expressed an intention "to impose a state prison commitment," the court also expressly invoked the presumptive ineligibility standard of section 1203, subdivision (e)(3), and stated its decision was based on the absence of unusual circumstances that would warrant granting probation. Had the trial court merely discussed aggravating factors, without tying them to section 1203, subdivision (e)'s unusual circumstances requirement, we might have accepted the People's contention that the court's error was not a significant factor in the decision to deny probation. However, the trial court's reference to section 1203, subdivision (e)(3), suggests the court may have denied probation, not because aggravating factors made defendant an

10

unsuitable candidate, but because those factors demonstrated the absence of unusual circumstances. On this record, we cannot say the trial court's error was not a significant factor in the decision to deny probation.

The People also argue remand is not required, because there is no reasonable probability the court would have granted probation under the appropriate standard. We decline to apply a harmless error analysis. (See *People v. Sherrick, supra,* 19 Cal.App.4th at p. 661 ["[w]e cannot 'save' the judgment on a harmless error analysis. While the offenses were undoubtedly serious, the trial court's comments unquestionably demonstrate that it was laboring under a false impression of appellant's legal status"].) As noted, remand is required when the sentencing court bases its determination to deny probation "in significant part" upon an erroneous impression of the defendant's legal status. (*People v. Ruiz, supra,* 14 Cal.3d at p. 168; see also *People v. Alvarez* (2002) 95 Cal.App.4th 403, 409 [remand for resentencing required due to mistaken application of § 1203, subd. (e)(2)]; *People v. Manriquez, supra,* 235 Cal.App.3d at p. 1620 [remand for resentencing required due to mistaken application of § 1203, subd. (e)(1)].) Here, the record demonstrates the trial court misunderstood the scope of its discretion, and may have relied upon the error to deny probation. A new sentencing hearing is therefore necessary for the trial court to consider defendant's probation request under the appropriate legal standard. (*People v. Downey* (2000) 82 Cal.App.4th 899, 912 ["[w]here, as here, a sentence choice is based on an erroneous understanding of the law, the matter must be remanded for an informed determination"].)

## II

### *Consecutive Sentence for Hit and Run*

Defendant contends the trial court abused its discretion in imposing a consecutive sentence for the felony hit and run conviction. Specifically, she argues the trial court

abused its discretion in finding the DUI causing bodily injury and felony hit and run offenses were "predominantly independent of each other" because they "occurred at the same time and involved only one victim." She also argues her blood alcohol content was such that she could not have formed separate objectives with respect to the two crimes. We are not persuaded.

A trial court has broad discretion to determine whether sentences are to run concurrently or consecutively. (*People v. Scott* (1994) 9 Cal.4th 331, 349, 351.) We will not disturb the trial court's determination absent a clear showing of abuse. (*People v. Bradford* (1976) 17 Cal.3d 8, 20.) An abuse of discretion is shown when the trial court exceeds the bounds of reason, all circumstances being considered. (*Ibid.*)

The criteria applicable to the trial court's discretion are set forth in rule 4.425, which states that in imposing a consecutive sentence the trial court may consider: (1) whether the "crimes and their objectives were predominantly independent of each other"; (2) whether the "crimes involved separate acts of violence or threats of violence"; and (3) whether the "crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." (Rule 4.425(a)(1)-(3).) These criteria are not exclusive. Rule 4.408(a) states: "The enumeration in these rules of some criteria for the making of discretionary sentencing decisions does not prohibit the application of additional criteria reasonably related to the decision being made. Any such additional criteria must be stated on the record by the sentencing judge."

Although defendant's crimes occurred at the same time and involved a single victim, the trial court could nevertheless conclude they were predominantly independent of each other. As the People observe, DUI causing bodily injury and felony hit and run are separate and distinct criminal acts. (See *People v. Butler* (1986) 184 Cal.App.3d 469,

12

473-474 [for purposes of section 654, subdivision (a), vehicular manslaughter and felony hit and run are separate and independent criminal acts involving different states of mind and objectives]; see also *People v. Jones* (2012) 54 Cal.4th 350, 358.) The criminal act in DUI causing bodily injury is driving under the influence of alcohol and causing bodily injury to another person. (Veh. Code, § 23153, subd. (a).) By contrast, " '[t]he gravamen of a [Vehicle Code] section 20001 offense . . . is not the initial injury of the victim, but leaving the scene without presenting identification or rendering aid.' [Citation.]" (*People v. Harbert* (2009) 170 Cal.App.4th 42, 59.) "Although a violation of [Vehicle Code] section 20001 is popularly denominated 'hit-and-run,' the act made criminal thereunder is not the 'hitting' but the 'running.' " (*People v. Corners* (1985) 176 Cal.App.3d 139, 148.) Thus, DUI causing bodily injury and felony hit and run are separate and independent crimes, even when they happen to occur at the same time and involve a single victim.

We reject defendant's challenge to the sufficiency of the evidence underlying the trial court's determination the crimes were predominantly independent, including her claim she was too drunk to form separate objectives with respect to the two crimes. Defendant admitted the elements of two separate and independent crimes involving different states of mind and objectives when she entered her no contest plea. (*In re Chavez* (2003) 30 Cal.4th 643, 649; *People v. Butler, supra,* 184 Cal.App.3d at pp. 473-474). Having done so, defendant waived any challenge to the sufficiency of the evidence on appeal. (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1364.) We therefore conclude the record supports the trial court's determination defendant's crimes were predominantly independent of each other, and find no abuse of discretion.

13

### III

### *Vehicle Code Section 23550 Fine*

Next, defendant contends the trial court erred in imposing a $390 fine pursuant to Vehicle Code section 23550.  The People concede the error.  We have reviewed the record and agree with the parties.

Vehicle Code section 23550, subdivision (a), provides in pertinent part:  "If a person is convicted of a violation of Section 23152 and the offense occurred within 10 years of three or more separate violations of . . . Section 23152 . . . that resulted in convictions, that person shall be punished by . . . a fine of not less than three hundred ninety dollars ($390) nor more than one thousand dollars ($1,000)."  The record indicates defendant sustained one prior DUI conviction in 1998.  There is nothing in the record to suggest defendant sustained three or more prior DUI convictions within the last 10 years, as required to support the imposition of a fine pursuant to Vehicle Code section 23550.  Accordingly, we strike the fine.

### IV

### *Restitution and Parole Revocation Fines*

Finally, defendant challenges the trial court's imposition of restitution and parole revocation fines in the amount of $240 each pursuant to sections 1202.4 and 1202.45, respectively.  Defendant argues both fines must be reduced to $200, the applicable statutory minimum at the time defendant committed her crime in June 2011.  (Stats. 2010, ch. 351, § 9, eff. Sept. 27, 2010 [former § 1202.4, subd. (b)(1)].)  Defendant maintains the record demonstrates the trial court intended to impose the statutory minimum.

During the sentencing hearing, the trial court stated, "you are ordered to pay . . . a restitution fine set in the minimum amount of $240.  An additional restitution fine in the

14

same amount is imposed but suspended and will remain suspended unless and until your parole is revoked." Given the trial court's statement, the People agree the restitution and parole revocation fines should be reduced from $240 to $200.

Claims of error relating to sentences permitted by law but "imposed in a procedurally or factually flawed manner" are forfeited if not objected to in the trial court. The "unauthorized sentence exception" is a narrow exception to the forfeiture doctrine that applies where the sentence could not lawfully be imposed under any circumstances in a particular case. (*People v. Garcia* (2010) 185 Cal.App.4th 1203, 1218; *People v. Scott* (1994) 9 Cal.4th 331, 353-354.)

Here, the sentence was "imposed in a procedurally or factually flawed manner" because the trial court made a mistake in assuming the minimum fine was $240 rather than $200.[4] While the result was a slight increase to defendant's restitution fine over her actual minimum fine, the fine imposed was within the statutory range and no one objected to the amount of the fine imposed. Based on the record, we conclude defendant's claim of error is forfeited.

DISPOSITION

The conviction is affirmed. The sentence is vacated and the case is remanded to the trial court for resentencing in accordance with this opinion. Following the resentencing hearing, the clerk of the superior court is directed to prepare an amended abstract of judgment striking the $390 fine pursuant to Vehicle Code section 23550. The clerk is further directed to forward copies of the amended abstract of judgment

---

[4] At the time of defendant's offense, former section 1202.4, subdivision (b)(1), required the sentencing court to order every person convicted of a felony to pay a restitution fine of at least $200, and no more than $10,000. (Stats. 2010, ch. 351, § 9.)

to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


                                                          HOCH     , J.


We concur:


   NICHOLSON  , Acting P. J.


       BUTZ    , J.